UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | :     Case No. 23-cr-34 (JEB) |
| v. | : |
| | : |
| DAVID KRAUSS, | : |
| NICHOLAS KRAUSS, and | : |
| RUSSELL DODGE, JR., | : |
| | : |
| Defendants. | : |

**GOVERNMENT'S CONSOLIDATED SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence defendants David Krauss and Russell Dodge to 90 days of home detention, 60 hours of community service, and $500 in restitution, and defendant Nicholas Krauss to 75 days of home detention, 60 hours of community service, and $500 in restitution.

I. **Introduction**

David Krauss, a 56 year-old owner of rental property, Nicholas Krauss, a 33 year-old owner of rental property, and Russell Dodge, a 40 year-old owner of a property management company (collectively, "Defendants"), participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential

1

election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Defendants each pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of home detention is appropriate in this case because Defendants entered the Capitol building within ten minutes of the initial breach of the Senate Wing Door, and entered the Crypt at a particularly volatile time, moments before the rioters overpowered the police line that was attempting to stop the crowd from advancing further into the building. Although each of the defendants quickly pleaded guilty, Nicholas Krauss expressed remorse for his actions to Probation, but David Krauss gave only a weak expression of remorse, and Dodge gave none at all. As a result, a longer sentence of home detention is appropriate for David Krauss and Dodge.

The Court must also consider that Defendants' conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances of David Krauss's and Dodge's crime support a sentence of 90 days of home detention, 60 hours of community service, and $500 in restitution, and those of Nicholas Krauss's crime support a recommendation of 75 days of home detention, 60 hours of community service, and $500 in restitution.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

## II. Factual and Procedural Background

*The January 6, 2021, Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 35 (Statement of Offense) ¶¶ 1-7.

*Defendants' Participation in the January 6, 2021, Capitol Riot*

In January of 2021, David Krauss lived in Sewell, New Jersey, Nicholas Krauss lived in Pitman, New Jersey, and Russell Dodge lived in Pedricktown, New Jersey. Sewell and Pitman are approximately 3 miles apart. Pedricktown is less than 20 miles from Sewell and Pitman.

David Krauss is Nicholas Krauss's father. Russell Dodge is an acquaintance of David Krauss. Defendants traveled together from New Jersey to Washington, D.C., on the morning of January 6, 2021. Once in Washington, D.C., Defendants attended the rally at the Washington Monument. They then walked to the Capitol Reflecting Pool on the west front of Capitol grounds, arriving at approximately 2:03 p.m.

They climbed the Upper West Terrace stairs with a mass of rioters at 2:16 p.m., which led them to the Senate Wing Door. They entered the Capitol building via the Senate Wing Door at approximately 2:22 p.m., ten minutes after the initial breach of the door. When they entered, there was broken glass from the windows on the floor, and the alarm was sounding.



Image 1: Screenshot from USCP CCTV capturing Nicholas Krauss (red), Russell Dodge (orange), and David Krauss (green) entering the Capitol via the Senate Wing Door at approximately 2:22 p.m.

Once they were inside, they walked south and entered the Crypt at approximately 2:24 p.m. Defendants were part of the mass of rioters in the Crypt who overpowered the line of U.S. Capitol Police at approximately 2:25 p.m. The police were trying to hold a line in the Crypt to prevent the rioters from getting further into the building, but were overwhelmed by the sheer number of rioters inside the Crypt, which included the defendants.



Image 2: Screenshot from Exhibit 1 at timestamp 00:21, which is USCP CCTV capturing David Krauss (green) entering the Crypt at approximately 2:24 p.m.



Image 3: Screenshot from Exhibit 1 at timestamp 00:23, which is USCP CCTV capturing Russell Dodge (orange) and Nicholas Krauss (red) entering the Crypt at approximately 2:24 p.m, right behind David Krauss, who is obstructed by the statue in the foreground.



Image 4: Screenshot from Exhibit 1 at timestamp 01:38, which is USCP CCTV capturing rioters overwhelming the police inside the Crypt at approximately 2:25 p.m.

At approximately 2:34 p.m., Defendants entered a hallway near the House of Representatives' Office of Attending Physician, where they stayed for approximately one minute.



Image 5: Screenshot from Exhibit 2 at timestamp 00:40, which is USCP CCTV capturing Nicholas Krauss (red), Russell Dodge (orange), and David Krauss (green) near the House of Representatives' Office of Attending Physician at approximately 2:34 p.m.

Defendants re-entered the Crypt at approximately 2:35 p.m. They exited the Crypt and entered the Crypt Lobby East at approximately 2:37 p.m. They returned to the Crypt Lobby East about a minute and a half later, re-entered the Crypt, and exited via the Senate Wing Door at approximately 2:39 p.m. Defendants were inside the Capitol for approximately 17 minutes.

After exiting the Capitol, they drove back to New Jersey on the night of January 6.

*David Krauss's Pre-Arrest Interview with the FBI*

On April 29, 2022, the FBI conducted a non-custodial pre-arrest interview with David Krauss, during which David Krauss identified himself, Nicholas Krauss, and Russell Dodge inside the Capitol building on January 6. He stated that they did not break anything, and they were there for approximately five to ten minutes. David Krauss provided his own contact information to the FBI. He stated that he and his co-defendants tried to stop others from breaking things inside the Capitol.

*Nicholas Krauss's Pre-Arrest Interview with the FBI*

On April 29, 2022, the FBI conducted a non-custodial pre-arrest interview with Nicholas Krauss, during which Nicholas Krauss identified himself in photos inside the Capitol building on January 6. He also identified his father. When shown a photo of Dodge, he said that he did not know Dodge's name, although he, his father, and Dodge drove from New Jersey to Washington, D.C. together. Nicholas Krauss provided his own contact information to the FBI. He stated that he and his co-defendants "stopped people from doing destructive things" inside the Capitol. He stated that they were not there for violence.

*Russell Dodge's Pre-Arrest Interview with the FBI*

On May 17, 2022, the FBI conducted a non-custodial pre-arrest interview with Russell Dodge, during which Dodge identified himself, David Krauss, and Nicholas Krauss inside the Capitol building on January 6. He stated that they traveled to the Capitol the morning of January 6, and drove back that night. He stated that he did not see anyone do anything "crazy" inside of the building.

*The Charges and Plea Agreement*

On November 14, 2022, the United States charged David Krauss, Nicholas Krauss, and Russell Dodge by criminal complaint with violating 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(D) and (G). On November 15, 2022, law enforcement officers arrested Defendants in New Jersey. On February 1, 2023, the United States charged Defendants by a 4-count Information with violating 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(D) and (G). On April 13, 2023, pursuant to a plea agreement, each defendant pleaded guilty to Count 4 of the Information, charging each defendant with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, each defendant agreed to pay $500 in restitution to the Architect of the Capitol.

### III. Statutory Penalties

Defendants each now face a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, each defendant faces up to six months of imprisonment and a fine of up to $5,000. Each defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of 90 days of home detention, 60 hours of community service, and $500 in restitution for David Krauss and Russell Dodge, and 75 days of home detention, 60 hours of community service, and $500 in restitution for Nicholas Krauss.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Defendants' participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for misdemeanor defendants like these three, the absence of violent or destructive acts is not a mitigating factor. Had Defendants engaged in such conduct, they would have faced additional criminal charges.

The most important factor regarding sentencing for Defendants is the fact that they entered very close in time to the initial breach, and they were inside the Crypt as the mass of rioters overran the police who were trying to bar further entrance into the building.

Additionally, David Krauss and Dodge have not demonstrated remorse for their actions.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of home detention in this matter.

### B. The History and Characteristics of David Krauss, Nicholas Krauss, and Russell Dodge

David Krauss has no criminal history. ECF 39 ¶ 25.

Nicholas Krauss was convicted of operating a motor vehicle under the influence of intoxicants in 2014. ECF 40 ¶ 24.

Russell Dodge has no criminal history. ECF 38 ¶ 24.

Each defendant has complied with the terms of his supervision during the pendency of this case.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

*Specific Deterrence*

David Krauss made a weak expression of remorse to Probation when he stated: "I regret entering the Capitol on January 6th. I was only there to voice my First Amendment right with no other intentions." ECF 46 ¶ 21.

Nicholas Krauss made a much more sincere expression of remorse to Probation when he stated: "Dear Judge Boasberg, on the morning of January 6 I went to D.C. to watch our President speak live and then to return home. Unfortunately, I found myself caught up in something I never intended to. I regret entering the Capitol on this day and I am deeply sorry that I did. If I knew what was going to take place that day I would have never left my house." ECF 48 ¶ 21.

Russell Dodge has expressed no remorse at all.

David Krauss's weak expression of remorse and Dodge's lack of remorse reflect the need for a sentence that will deter each of them individually from similar wrongdoing.

11

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence David Krauss, Nicholas Krauss, and Dodge based on their own conduct and relevant characteristics, but should give substantial weight to the context of their unlawful conduct: their participation in the January 6 riot.

Defendants have each pleaded guilty to Count 4 Information, charging him with Parading, Demonstrating, or Picketing in Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Andrew Bennett*, 21-cr-227 (JEB), this Court sentenced the defendant to three months of home detention and 24 months' probation after he pled guilty to 40 U.S.C. § 5104(e)(2)(G). Bennett entered the Senate Wing Door two minutes after it was breached and was inside the building for approximately 30 minutes, during which he moved with the mob through the Rotunda, Statuary Hall, and near the Speaker's Lobby.

In *United States v. Michael Orangias*, 21-cr-265 (CKK), Judge Kollar-Kotelly sentenced the defendant to three months of home detention and 36 months' probation after he pled guilty to 40 U.S.C. § 5104(e)(2)(G). Orangias was inside the building for approximately five minutes, gave an interview to a podcast where he defended his actions and those of his fellow rioters, and twice lied to the FBI by saying he did not enter the building.

In *United States v. Willard Bostic*, 21-cr-643 (CKK), Judge Kollar-Kotelly sentenced the defendant to three months of home detention and 36 months' probation after he pled guilty to 40 U.S.C. § 5104(e)(2)(G). Bostic entered through the Senate Wing Door and was inside the building for four minutes. He showed no remorse for his actions, stating that people should storm the Capitol again.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V. Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction,

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," and any offense "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that each defendant must pay $500 in restitution, which reflects in part the role each defendant played in the riot on January 6.[4] ECF 32 ¶ XI (David Krauss), ECF 33 ¶ XI (Nicholas Krauss), ECF 34 ¶ XI (Russell Dodge). As the plea agreement for each defendant reflects, the riot at the United States Capitol had caused "approximately $2,881,360.20" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of October 2022. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Each defendant's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR at ECF 46 ¶ 64 (David Krauss), PSR at ECF 48 ¶ 67 (Nicholas Krauss), PSR at ECF 50 ¶ 67 (Russell Dodge).

## VI.   Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence defendants David Krauss and Russell Dodge to 90 days of home detention, 60 hours of community service, and $500 in restitution, and defendant Nicholas Krauss to 75 days of home detention, 60 hours of community service, and

---

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

$500 in restitution. Such sentences protect the community, promote respect for the law, and deter future crime by imposing restrictions on each defendant's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:   */s/ Carolina Nevin*
        CAROLINA NEVIN
        Assistant United States Attorney
        NY Bar No. 5226121
        601 D Street, NW
        Washington, DC 20530
        (202) 803-1612
        carolina.nevin@usdoj.gov