**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA :
:
v. : Case No. 23-cr-34 (JEB)
:
RUSSELL DODGE, JR., : Honorable Judge James E. Boasberg
:
*Defendant.* :

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING AND ASSESSMENT OF 18 U.S.C. § 3553(a) SENTENCING FACTORS**

COMES NOW, Russell Dodge, Jr., by and through counsel, and respectfully provides the Court with his position regarding the application of the sentencing factors to the Court's obligation to impose a sentence "sufficient, but not greater than necessary to comply" with the factors found in 18 U.S.C. § 3553(a). Mr. Dodge, with a clean record and after accepting responsibility for his actions, requests probation as the appropriate penalty for his first offense misdemeanor conviction under 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building.

Pursuant to U.S.S.G. 1B1.9, the U.S. Sentencing Guidelines do not apply to any count of conviction that is a Class B misdemeanor. Because there are no relevant sentencing guidelines for the Court to follow, it is especially important for the Court to weigh Mr. Dodge's actions to determine a fair and individualized sentence under 18 U.S.C. § 3553(a).

Mr. Russell traveled to Washington, D.C. from Pedricktown, New Jersey on January 6, 2021 to attend then-President Trump's rally at the Washington Monument with his friends, David Krauss and Nicholas Krauss. They traveled to show their support for Mr. Trump and watch him speak in person. The three then walked to the Reflecting Pool in front of the United

States Capitol building and arrived around 2:09 p.m. Mr. Dodge did not travel to Washington, D.C. to carry out violence against the Capitol or those in it or to mount an insurrection. He did not come prepared with any weapons, flagpoles, bats, or pepper spray, and he did not join those who did.

## Background

On March 27, 2023, Mr. Dodge pleaded guilty to a single count of Parading, Demonstrating or Picketing in a Capitol Building, a violation of Title 40, United States Code, Section 5104(e)(2)(G).

Mr. Dodge did not come to Washington, D.C. to incite violence. He did not come prepared with weapons or tactical gear, nor did he have any plans to stop or delay the election. At no point during January 6 did Mr. Dodge incite violence, take part in any violence, or encourage any violence. He did not assault law enforcement, steal objects from the Capitol building, or disrupt anything inside the Capitol building.

Mr. Dodge drove from New Jersey with David and Nicholas Krauss to attend the rally and hear then-President Trump speak. Anytime Mr. Dodge was seen in videos from January 6, he was seen standing around, following the orders of law enforcement, and not engaging in any sort of violence. As it has been said many times during the prosecution of January 6 defendants, people who were there on that day fall into different categories of seriousness, and it is clear that Mr. Dodge does not fall into the more serious categories of defendants who assaulted law enforcement officers, stole objects and artifacts from the Capitol building, or attempted to stop or delay the certification of the 2020 election.

## Argument

### A. The Court shall impose a sentence sufficient, but not greater than necessary, to comply with 18 U.S.C. 3553(a).

"The Court shall impose a sentence sufficient, but not greater than necessary, to comply with" 18 U.S.C. § 3553(a)'s mandates. These include considering the "nature and circumstances of the offense and the history and characteristics of the defendant," reflecting the seriousness of the offense, affording adequate deterrence, protecting the public, and providing necessary rehabilitation to the defendant. 18 U.S.C. § 3553(a)(1-2).

In *United States v. Booker*, 125 S.Ct. 738 (2005), the United States Supreme Court restored to sentencing judges the power to use discretion in determining appropriate sentences. "In the wake of *Booker*, therefore, the discretion of a sentencing court is no longer bound by the range prescribed by the sentencing guidelines. Nevertheless, a sentencing court is still required to 'consult [the] guidelines and take them into account when sentencing.'" *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (quoting *Booker*, 125 S.Ct. at 767). In light of *Booker*, "a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in 3553(a) before imposing the sentence." *Id*. (citation omitted).

**B. <u>18 U.S.C. 3553(a) Factors to Consider in Sentencing</u>**

**a. <u>Nature and Circumstances of the Offense</u>**

Mr. Dodge pleaded guilty to a single count of Parading, Demonstrating, or Picketing in a Capitol Building, a violation of Title 40, United States Code, Section 5104(e)(2)(G). Mr. Dodge arrived in Washington, D.C. to attend the rally and show his support for his preferred candidate, then-President Trump. He came without any association to any groups, he did not bring firearms, tactical gear, or anything that could

be used as a weapon. He did not anticipate the violence that occurred that day, and certainly did not come prepared for it.

Mr. Dodge was first seen on January 6 near the Washington Monument, joining the group that stood to watch Trump speak. He is seen wearing a tan hoodie, waiting for Trump to begin. Image 1. Mr. Dodge was not part of some larger group, nor was he carrying anything that could be used as a weapon—not even a flagpole which, unfortunately, others used as weapons on that day.



After attending the rally, Mr. Dodge followed the crowd towards the Capitol building. Outside the Reflecting Pool west of the Capitol, he stood with his friends, but still refrained from being a part of any violence. At about 2:22 p.m., Mr. Dodge entered the Capitol building via the Senate Wing Door and exited about 17 minutes later through the same door at approximately 2:39 p.m. While inside, Mr. Dodge followed the crowd, and did not realize he was not supposed to be inside the building until law enforcement

officers told him and others to leave. Unlike others who were told to leave by officers but remained in the building for some time, Mr. Dodge complied with the officers' orders without resistance or hesitation, and left the Capitol building.




**b. <u>History and Characteristics of the Defendant</u>**

Mr. Dodge was born to Russell Dodge and Susan Crispin in Woodbury, New Jersey. His parents divorced when he was 12 years old, and while his mother still lives in New Jersey, his father moved to Nevada and saw him about once a year during the summer. Mr. Dodge described his childhood as great, mostly spending time with his mother and grandparents. Mr. Dodge graduated high school in 2002 and was dual enrolled in a carpentry apprenticeship program at Gloucester County Institute of Technology during high school. Mr. Dodge owns and operates his own business, where he owns and maintains nearly 40 rental units. Before he started his own business, he was a union carpenter in New Jersey.

Mr. Dodge's family, friends, and community all describe him as hard working, helpful, and dedicated to his community. It is clear from his own actions, and from what others have said of him, that he is a serious asset to his community. Those closest to him can attest to his character, as the attached letters show:

Dan Reilly is a retired US Navy veteran and friend of Mr. Dodge. Exhibit 1, Dan Reilly Letter. Mr. Reilly has known Mr. Dodge for about 8 years and describes him as a "responsible and mature young man." *Id*. Mr. Reilly describes that Mr. Dodge is a volunteer with Habitat for Humanity where he helps build and remodel homes for veterans and others in need. Mr. Reilly and other VFW members are ready to support Mr. Dodge.

Brian Crispin is Mr. Dodge's stepfather. Exhibit 2, Brian Crispin Letter. Mr. Crispin has known Mr. Dodge for 25 years and notes that Mr. Dodge is highly respected amongst his family, friends, neighbors, and tenants. Mr. Crispin highlights Mr. Dodge's contributions to his community through his involvement "in local VFW, [by donating] his labor for friends and family for home repairs [, and by purchasing] several empty houses (40) and [turning] them into desirable living homes in lower income communities." *Id*. Mr. Dodge has been a part of his tenants' lives since his early 20s. *Id*. Mr. Crispin notes that Mr. Dodge "is an asset to the local communities [and] a very respected gentleman." *Id*.

Bonnie Jean Futia is Mr. Dodge's aunt. Exhibit 3, Bonnie Jean Futia Letter. Ms. Futia has known Mr. Dodge for 40 years. *Id*. Ms. Futia has pledged to support Mr. Dodge in any way that she can. *Id*. She also describes Mr. Dodge as "an asset to the community"

because of his charitable works including buying and refurbishing properties for elderly and low-income tenants and taking care of abandoned cats. *Id*.

Susan Crispin is Mr. Dodge's mother. Exhibit 4, Susan Crispin Letter. She describes Mr. Dodge as a "family oriented" because he became the man of the house when he was 6 and because he "helps out faithfully with his grandmother who is in assisted living and his uncle who cannot live alone." *Id*. Like others who know Mr. Dodge, Ms. Crispin describes her son as "always willing to lend a helping hand to anyone who needs it." *Id*. It is also clear from Ms. Crispin's letter that Mr. Dodge's tenants depend on him. *Id*. She notes that sometimes he "supplies his renters with furniture" and has helped a homeless person by supplying him "with food, shelter and clothing." *Id*.

Mary Jane Doherty is Mr. Dodge's aunt. Exhibit 5, Mary Jane Doherty Letter. Ms. Doherty has known him since he was a baby and notes "he has become a very responsible person" who "is very friendly and would offer to help you whenever you need it." *Id*. Ms. Doherty also notes that "[h]e has people that depend on him." *Id*. She remembers a time when she was on vacation and her house's roof leaked and Mr. Dodge helped clean up and prevent further damage. *Id*. She also highlights how helpful Mr. Dodge has been to his grandmother and uncle whom he helped move into assisted living. *Id*.

Michael Doherty, Sr. is Mr. Dodge's uncle. Exhibit 6, Michael Doherty, Sr. Letter. Mr. Doherty describes his nephew as a "very good [m]an" who is "always ready to offer a helping hand." *Id*. He notes that Mr. Dodge is a hard worker and driven for success in his business. *Id*. He remembers a time Mr. Dodge helped with his plumbing, even when nobody else could and he remembers another time when Mr. Dodge helped contain his house's leaky roof. *Id*.

Michael Doherty, Jr. is Mr. Dodge's cousin. Exhibit 7, Michael Doherty, Jr. Letter. Mr. Doherty describes his cousin as a "dedicated, determined, loving and extremely hard-working individual." *Id*. Mr. Doherty shares the sentiment that Mr. Dodge is "the type of person who would give you the shirt off his back" because his "love of family and friends is boundless." *Id*. Mr. Doherty recalls many times Mr. Dodge would "drop everything" to help, including helping Mr. Doherty with handyman work around the house. *Id*. Mr. Doherty describes Mr. Dodge as "such an important part of [his] life." *Id*.

Mr. Dodge's dedication to his friends, family, and community are abundantly clear. Mr. Dodge has people who depend on him, and they are ready to support him and hold him accountable. Mr. Dodge understands that he owes it to his tenants to continue abiding by the law, and it is evident from his family that his actions on January 6 were aberrant.

**c. <u>The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense</u>**

The nature and circumstances of the offense and of Mr. Dodge must be balanced with imposing a sentence that reflects the seriousness of this offense, promotes respect for the rule of law, and provides just punishment. Mr. Dodge understands the seriousness of this charge and, indeed, the entirety of what occurred on January 6. That is exactly why he took responsibility for his actions, entered into an early plea agreement, has agreed to pay the $500 restitution to the Architect of the Capitol despite committing no acts of destruction or vandalism himself, and has expressed his deep remorse for his actions on that day.

Mr. Dodge takes full responsibility for his actions and his role. And as serious as Mr. Dodge's actions were, they must be viewed in context when considering sentencing. Unlike others, Mr. Dodge did not bring weapons or tactical gear to the rally, and he did not anticipate the violence that occurred that day. He did not instigate any violence, call for violence, encourage violence on the part of others, or take place in any violent acts. He did walk through the Capitol building, but upon learning that the building was restricted to exclude the general public, he complied with the orders of law enforcement officers without resistance and exited the Capitol building.

**d. To Afford Adequate Deterrence to Criminal Conduct**

Mr. Dodge has been adequately deterred and is not likely to engage in future criminal conduct. He has no criminal record, but will now live with the consequences of a criminal conviction every day, under the law and in his everyday life. Both during and after his sentence, he intends to return to his law-abiding life by continuing to be the son, nephew, cousin, grandson, friend, and landlord that his family, friends, and community all depend on.

**e. To Protect the Public from Further Crimes of the Defendant**

Mr. Dodge is not a danger to the community. Both his clean record prior to this conviction and strong community ties suggest that he is well-equipped to follow the Court's orders and maintain a law-abiding life. By all accounts from friends and family members, Mr. Dodge is extremely unlikely to follow down a path of criminality. There is simply too much on the line. Mr. Dodge is not a dangerous individual, and he does not pose any threat to the public. Quite the contrary, he is a valuable asset to his community,

and they need him to continue supporting them. Mr. Dodge's conduct on January 6 is an isolated and unique set of circumstances that are not likely to be replicated.

**f. The Need to Avoid Sentencing Disparity.**

If this Court were to impose a sentence requested by the Government, it would create an unwarranted sentencing disparity amongst cases that this Court has already sentenced or are awaiting sentencing. 18 U.S.C. § 3553(a)(6) directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Due to the large number of January 6 cases, there are many cases available for comparison, all subject to unique facts and criminal histories. Nonetheless, comparison and consideration of these cases is helpful.

Andrew Bennett (1:21-CR-227-JEB), the Government requested 3-months home detention. The court sentenced Mr. Bennett to 3-months home detention. Mr. Bennett went inside the Capitol with codefendants, Erik Rau and Derek Jancart. Mr. Bennett's actions were far more serious than Mr. Dodge and implied a higher culpability. Mr. Bennett not only went inside but saw the havoc wreaked by others that he was with. He participated in chanting "break it down" when he saw others break down an office door. He live-streamed his time inside the Capitol. These actions are more serious than anything Mr. Dodge engaged in that day.

Jones Caleb (1:21-CR-321-JEB) was sentenced to 60-days home detention when the Government requested 3 months. Unlike Mr. Dodge, Mr. Jones scaled a wall to get inside the Capitol, was pepper sprayed by the officers, and then finally had to escorted out of the building. While inside the Capitol, he took photos of the chaos inside. Similar

to the case above, this case is also dissimilar to Mr. Dodge and necessitates measures of punishment beyond probation.

Douglas Farquhar Macrae (1:22-CR-181-JEB) was sentenced to 12-months' probation when the government requested 4-months home detention. Mr. Macrae's case is similar to Mr. Dodge and should be used as a metric when deciding this present case. Much like Mr. Dodge, Mr. Macrae went inside the building but did not have any pre-planning, did not participate in any violence, did not make any threats. Similarly, Brian Sizer (1:22-CR-376-JEB) was sentenced to 12-months' probation and a $500 fine. The government in that case requested 26-months' probation. Mr. Sizer went inside the Capitol, took photos, gloated about his involvement and entered and re-entered the Capitol with his wife.

Mr. Dodge's behavior, lack of planning, his law-abiding life prior to this charge all necessitate a sentence of probation only.

**C. The Sentencing Guidelines and Probation Office Recommendation**

Pursuant to USSG 1B1.9, the U.S. Sentencing Guidelines do not apply to any count of conviction that is a Class B misdemeanor. In light of his role in the offense, his history and characteristics, the need to impose an appropriate sentence, as well as Mr. Dodge's charitable service/good works, his community ties, the fact that this was aberrant behavior, his employment record, the fact that he was a non-violent offender, his willingness to enter into an early plea agreement, and his conduct on pre-trial release, Mr. Dodge requests a term of probation of 12-months along with restitution and other conditions the Court may deem appropriate.

**Conclusion**

For these reasons, Mr. Dodge respectfully requests a term of probation of 12-months, along with other conditions the Court sees appropriate.

Respectfully submitted,

Russell Dodge, Jr.
*By Counsel*

__/s/________________________
Farheena Siddiqui
D.C. Bar No. 888325080
Moore, Christoff & Siddiqui, PLLC
526 King St., Suite 506
Alexandria, VA 22314
Email: fsiddiqui@moorechristoff.com
Phone: 703-535-7809
Fax: 571-223-5234
*Counsel for the Defendant*

**Attachments**

1. Dan Reilly Letter
2. Brian Crispin Letter
3. Bonnie Jean Futia Letter
4. Susan Crispin Letter
5. Mary Jane Doherty Letter
6. Michael Doherty, Sr. Letter
7. Michael Doherty, Jr. Letter

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8 day of September, 2023, I electronically filed the foregoing with the Clerk of Court Using the CM/ECF system, which will then send a notification of such filing (NEF) to:

Carolina Nevin
Assistant United States Attorney
601 D Street NW
Washington, DC 20001
Email: carolina.nevin@usdoj.gov

___/s/____________________
Farheena Siddiqui
D.C. Bar No. 888325080
Moore, Christoff & Siddiqui, PLLC
526 King St., Suite 506
Alexandria, VA 22314
Email: fsiddiqui@moorechristoff.com
Phone: 703-535-7809
Fax: 571-223-5234

# EXHIBIT 1

Honorable Judge James E. Borsberg
United Stated District Court
District of Columbia
333 Constitution Avenue N.W.
Washington DC 20001

**RE: Russell Dodge's Sentencing**

Dear Judge Borsberg:

I have known Russell approximately eight years.

Since we met, I have noticed a young man who carries himself as a responsible and mature young man.

Russell, although he is not a veteran, has been heavily involved with my Veterans of Foreign Wars Post whether it be his expertise as a carpenter with repairs or renovations. Also, he has helped us in fundraising to support the Veterans and the Community.

Russell Is also a volunteer with the local Habitat for Humanity. Russell has helped build and remodel homes for veterans and individuals in need within the community.

As a friend, I truly understand the trouble he may be in, but I would stand next to him because of his character and friendship.

Whatever the outcome, our VFW members and I will be there to help him in any way we can. Any confinement he may face, I believe is not the answer, only that I know he has learned from this experience, and feel he needs to be with his community and his family.

Respectfully yours,

Dan Reilly

Dan Reilly
*Retired USS Navy Veteran*

# EXHIBIT 2



247 Main Street, Harleysville, PA 19438
215.256.4221 215.256.1414
TLANDES.COM

7/4/2023

Honorable Judge James E. Boasberg

United States District Court

District of Columbia

333 Constitution Avenue N.W.

Washington D.C. 20001

Re: Russell Dodge's Sentencing

Your Honor:

I am writing this letter in reference to my stepson, Russell Dodge. I want to bring to your light the type of person he is despite allegations that he has faced in recent times. Russell has been my stepson for the past twenty five years and has been nothing but respected by his family, friends, neighbors, and tenants that he takes care of. While in high school he took a two-year carpentry class and joined the carpenter's union right out of school. He has donated his time judging the annual National SkillsUSA competition, involved and supported the local Habitat for Humanity, donating his time building handicap ramps. Russell is also involved in local VFW, donates his labor for friends and family for home repairs and purchased several empty houses (40) and then turned them into desirable livable homes in lower income communities and has been their landlord since his early 20s.

I am aware of the charges against Russell and the consequences he is facing looking at the current situation. I would like to plead for leniency, since he is an asset to the local communities, a very respected gentleman and I am sure he has learned from this experience and will not think of repeating it.

I hope that you look into this matter and consider this character reference letter before passing on any verdict or possibly consider community services rather than confinement.

Thank You

Brian Crispin

Commercial Service Manager

bcrispin@itlandes.com

o:(215)256-4221 ext. 2175 / c: (215)622-8673

# EXHIBIT 3

DOJ Case 1.22-mj-252

My name is Bonnie Jean Futia and I am the aunt of Russell Dodge. He has been in my life for forty years. No matter how much time elapses between visits, I know he is only a phone call away if I need anything.

Russell loves his country and is proud to be an American. I don't imagine that walking peacefully past peace officers who did not deter him gave cause for alarm, Until it did. When he was advised later that he had entered a restricted building Russell realizes the consequences of his action and accepts full responsibility. Am willing to help him anyway I can as he is always there for me.

Russell is a good person and an asset to the community. He buys and refurbishes properties. Some of his tenants are older and there are those with diminished income. He is quick to be there with tools, a lawn mower or whatever it takes to help out.

Russell lives in a rural area that seems to be a great spot for dropping off unwanted pets.

These cats and their babies are taken to the vet for health checks and then spay or neuter.

The cats that aren't rehomed still reside with him. Russell has even purchased an outside enclosure with access to the house to protect cats from hawks coyotes and foxes.

Russell has learned from this experience and would like to put it behind him. He is a kind, caring person. One mistep should not make the man

Bonnie Jean [illegible]

# EXHIBIT 4

July 5, 2023
Honorable Judge James C. Boasberg
United States District Court

Re: Russell Dodge's Sentencing

Your honor:

Russell Dodge is my son who I am very proud of. He has been in my life for forty years. From the age of 6 he became the man of the house and to this day he's still here for me. He is very family oriented. He helps out faithfully with his grandmother who is in assisted living and his uncle who cannot live alone. He is always willing to lend a helping hand to anyone who needs it.

He is a great animal lover. He has 10 cats that people have dumped on his property. He is also a great landlord. He has at least 40 rental property that he maintains. He sometimes supplies his renters with furniture that he has or is given to him. He also had a homeless person helping him that he's supplied with food, shelter, and clothing. He was on the board for Habitat for Humanity.

I understand the trouble Russell is in and it is very regretful what happened that day. I know he regrets being there.

Respectfully,
Susan Crispin

# EXHIBIT 5

July 04, 2023

Honorable Judge James E. Boasberg
United States District Court
District of Columbia
333 Constitution Avenue, N. W.
Washington D. C. 20001

Re: Russell Dodge's Sentencing

Your Honor:

Russell Dodge is my nephew. Have known him my whole life. I babysat him as baby and a toddler form time to time.

Today he has become a very responsible person. He is very friendly and would offer to help you whenever you need it. He is the kind of person you would want for a friend. Russell is a very trusting person.

I understand the trouble he is in. He is taking responsibility by doing ever-thing that has been asked of him.

I cannot help him because I do not do the kind of work he does. He has people that depend on him.

Russell is a hard worker and has made a good life for himself. If you run into a problem he is there for you. You can always count on him.

When we were on vacation our roof leaked and he came over and helped my son clean up and put totes around for the leaks and helped us find a roofer.

He is close to his grandmother and she became sick and had to sell her home. He helped to fix it up and move all the furniture .He helped move her and his uncle into assisted living. She is in a wheelchair and he took her to a family wedding so that she could be there with everyone.

Respectfully yours,

Mary Jane Doherty

# EXHIBIT 6

June 25, 2023

Honorable Judge James E. Boasberg
United States District Court
District of Columbia
333 Constitution Avenue, N. W.
Washington D. C. 20001

Re: Russell Dodge's Sentencing

Your Honor:

I am Russel's Uncle. I have known him since he was born. Russell is a very good Man. He is always ready to offer a helping hand. He has helped me numerous times and would never accept payment. His love for life and Family is very strong. He is honest and hard working.

I do understand the trouble Russell is in and he is taking responsibility for his actions. He has been following all the directions that were given to him and has supplied all the information that was requested.

I can not help while he is confined or later, because he owns a business that requires knowledge to operate and maintain that business. Plus I am 70 years old.

Russell earned all that he has Today. He took classes in Carpentry in High School and later for more school and became a Union Carpenter. He earned awards in School and his drive helped him succeed. He took that knowledge and used it to grow a business. Hard work and dedication.

There are two personal experiences I would like to list. He helped fix my Toilet that was leaking when others could not. The Toilet was not braced properly. He made the proper corrections. I don' t have anymore issues.

When I was in North Carolina and it was raining very hard in NJ, my Son and Russell came and cleaned up all the water that was leaking through the Ceiling Light onto the Table and Floor. Russell climbed in the attack to place addition contains to contain a leaking Roof. I did not have to come Home.

Russell has learned from this experience. I do not believe confinement is the solution, he needs to be Home with his Family and community.

Respectfully yours,

Michael Doherty

# EXHIBIT 7

June 25, 2023

Honorable Judge James E. Boasberg
United States District Court
District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

*Re: Russell Dodge's Sentencing*

Your Honor:

My name is Michael Doherty and I am Russell Dodge's cousin. I have known Russell Dodge my entire life since only a few years separates the two of us. Russell is a dedicated, determined, loving and extremely hard-working individual. Everything that Russell has in life he has worked hard for.

Russell's dedication and determination over the years have allowed him to create his own flourishing real estate business. This business has allowed him to generate his own income, while simultaneously helping others. Many of the properties that Russell rehabilitates and rents are available to low income families.

Russell's love of family and friends is boundless. Not to sound cliché, but he is the type of person who would give you the shirt off his back. I can recall many times throughout my life where he would simply drop everything he was doing to lend a hand.

I recently became a new homeowner myself and am admittedly not very handy around the house. Anytime I had a new issue in the house pop up I was able to reach out to Russell. He would always answer the calls, stop over or walk me through things on the phone. If it was something he wasn't comfortable doing himself he would always provide a list of great folks he's worked with to make sure I was taken care of.

If I listed all of the things Russell has done for his family and friends over the years this letter would become far too long to read in one sitting. He's such an important part of my life that I made sure to ask him to be a groomsman for my upcoming wedding.

I understand the trouble that Russell is in and believe he is taking full responsibility for his actions. I would help Russell in any way I can, any day of the year within my capacity. Unfortunately, much of the help he would likely need would be out of my wheelhouse with regards to his business. I myself am a computer engineer so the majority of my expertise lies there.

Russell has definitely learned from this experience. I do not believe that additional confinement is necessary. It is my belief that getting back to his business, family and community would be most beneficial.

I greatly appreciate you taking the time to read and consider this letter when coming to your decision.

Respectfully your,
Michael Doherty