UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID KRAUSS,<br><br>Defendant. | Criminal Action No. 23-34 (JEB) |

**MEMORANDUM OPINION**

David Krauss was part of the mob that stormed the Capitol during the insurrection on January 6, 2021. For his conduct that day, he was charged with four criminal counts. He pled guilty to the misdemeanor of parading, demonstrating, or picketing in a Capitol building, for which this Court sentenced him to nine months of probation. Krauss now moves to lift the probation condition that restricts his ability to possess firearms, contending that it violates the statute governing probation conditions and that it is unconstitutional. As this Court is not persuaded, it will deny his Motion to Alter Judgment.

**I.    Background**

On January 6, about 20 minutes after rioters first broke into the Capitol and two minutes after Vice President Pence and Members of Congress evacuated the chambers, Krauss and two co-defendants entered the building and remained inside for 17 minutes. See ECF No. 35 (Statement of Offense), ¶¶ 5–10. For his conduct in the Capitol, Krauss was charged with entering and remaining in a restricted building, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building, in violation of 18 U.S.C. § 1752(a)(2); violent entry and disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); and

1

parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). See ECF No. 24 (Information).

He pled guilty to the fourth count on March 20, 2023. See ECF No. 32 (Plea Agreement) at 9; Statement of Offense at 5. That misdemeanor offense carries a maximum penalty of six months of imprisonment or five years of probation. See 18 U.S.C. § 5109(b) (prescribing penalties for violations of § 5104(e)(2)); id. § 3561(c)(2) (authorizing probation for misdemeanors). In its presentence report, the Probation Office recommended that the Court impose certain conditions of supervision and noted the option of requiring Defendant to refrain from possessing firearms and other dangerous weapons while on probation, pursuant to 18 U.S.C. § 3563(b)(8). See ECF No. 46 (PSR) at 10–11 & n.2.

On September 19, 2023, this Court sentenced Krauss to nine months of probation, a $1,000 fine, and $500 in restitution. See ECF Nos. 61 (Judgment) at 2, 4; 62 (Statement of Reasons) at 4. As a condition of his probation, the Court ordered him to "remove firearms, destructive devices, or other dangerous weapons from areas over which [he has] access or control until the term of supervision expires." Judgment at 4. Seeking the ability to possess firearms while on probation, Krauss now moves to alter the judgment and remove this condition. See ECF No. 59 (Mot. to Alter Judgment).

**II.     Legal Standard**

"[T]he sentencing judge has broad discretion to establish conditions of probation." United States v. Sun-Diamond Growers of California, 138 F.3d 961, 977 (D.C. Cir. 1998); see also United States v. Russell, 45 F.4th 436, 439 (D.C. Cir. 2022) (quoting United States v. Legg, 713 F.3d 1129, 1131 (D.C. Cir. 2013)) (discussing district courts' "wide discretion when imposing terms and conditions of supervised release"). Exercises of this broad discretion must

remain within the statutory and constitutional boundaries discussed below. See Russell, 45 F.4th at 439 (quoting Legg, 713 F.3d at 1131).

**III.    Analysis**

Krauss offers two arguments against the firearms condition of his probation, one statutory and one constitutional. The Court will address each in turn.

    A.  Statutory Challenge

Defendant first argues that the imposition of a firearms restriction contravenes the statute governing the conditions of probation, 18 U.S.C. § 3563. See Mot. at 2–3. That statute classifies some conditions as mandatory, see 18 U.S.C. § 3563(a), and others as discretionary. Id. § 3563(b). A condition that a defendant "refrain from possessing a firearm, destructive device, or other dangerous weapon" falls into the latter category. Id. § 3563(b)(8).

Discretionary conditions of probation must satisfy two statutory criteria. They need to "reasonably relate[] to the factors set forth" in 18 U.S.C. § 3553(a)(1)–(2), and "involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated" in 18 U.S.C. § 3553(a)(2). See 18 U.S.C. § 3563(b).

The § 3553(a) sentencing factors require the Court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

The Court will first determine whether the firearms restriction is reasonably related to these sentencing factors, and it will then examine whether the purposes of the firearms restriction justify the temporary curtailment of Krauss's liberty.

### 1.  § 3553(a) Factors

There are multiple reasons why the restriction is reasonably related to the § 3553(a) sentencing factors.  First, it reflects the serious nature and circumstances of Krauss's offense, as set out in § 3553(a)(1) and § 3553(a)(2)(A).  Defendant was a member of the crowd that stormed the Capitol on January 6.  He entered the building shortly after the mob broke in, forcing legislators to evacuate and delay certifying the 2020 election results.  See Statement of Offense, ¶¶ 5–10.  As this Court explained in United States v. Shaw, 2023 WL 3619416 (D.D.C. May 24, 2023), in which it imposed a probationary firearms restriction on a man convicted of a January 6 misdemeanor, "[W]hile [Krauss's] role in the mob was minor, the fact of his participation in an insurrection whose aim was to impair the peaceful transfer of power suggests that a firearms restriction during his probationary period is appropriate."  Id. at *2.  A firearms restriction helps to "promote respect for the law" and "provide just punishment" for Krauss's serious offense. See 18 U.S.C. § 3553(a)(2)(A).

Second, the firearms restriction helps to "afford adequate deterrence to criminal conduct."  Id. § 3553(a)(2)(B).  Deterrence is necessary because Krauss demonstrated a willingness to break the law by entering the Capitol alongside violent rioters.  See Statement of Offense, ¶¶ 5–7, 10.  Krauss attempts to distinguish himself from the defendant in Shaw, who "demonstrated a willingness to engage in criminal acts while on probation," which justified more restrictive probation conditions to deter future crimes.  See 2023 WL 3619416, at *3; Mot. at 6. It may be true that Krauss has not demonstrated a willingness to engage in criminal acts while on

4

probation, but as this Court highlighted in Shaw, the "relative brevity" of a defendant's sentence can justify more restrictive probation conditions to serve as deterrence. See 2023 WL 3619416, at *3 (citing United States v. Malenya, 736 F.3d 554, 564 (D.C. Cir. 2013) (Kavanaugh, J., dissenting)). In Shaw, the defendant received a sentence of 10 days of incarceration and two years of probation. Id. at *1. Here, Defendant received a more lenient sentence: no prison time and nine months of probation. See Judgment at 2. The Court thus finds the probationary firearms restriction to be an appropriate deterrent to future criminal conduct.

Third, the firearms restriction advances the public-safety goals articulated in 18 U.S.C. § 3553(a)(2)(C). As it did in Shaw, this Court "gives great weight" to the Probation Office's expertise in administering and overseeing probation conditions, as well as its determination that firearms restrictions help probation officers safely and effectively do their jobs. See 2023 WL 3619416, at *3. In its presentence report here, the Probation Office noted that a firearms restriction would "allow[] the probation officer to supervise the defendant without risk to safety caused by the possession of weapons." PSR at 11 n.2. The Court agrees that the probation officer supervising Krauss — who can visit him "at any time," see Judgment at 3 — is safer without guns in the house.

Defendant argues that, because he did not personally use a firearm or commit acts of violence during his offense, a firearms restriction cannot be "reasonably related" to the § 3553(a) sentencing factors. See Mot. at 2–4. The Court disagrees with this cramped reading of the statute, which does not command the Court to consider the crime of conviction in isolation, but rather its "nature" and the "circumstances" in which it was committed. See 18 U.S.C. § 3553(a)(1). For the offense of parading in a Capitol building, it is difficult to imagine more serious circumstances than the January 6 insurrection.

The cases Krauss cites fail to demonstrate why a firearms restriction is irrelevant or unwarranted here. In one, the Eighth Circuit held that a probation condition requiring the defendant to refrain from having children out of wedlock was improper because it was "in no way related to" the defendant's drug offense, did not properly "reflect the seriousness of [that] offense," and would not advance the purposes of deterrence, public safety, or rehabilitation. United States v. Smith, 972 F.2d 960, 962 (8th Cir. 1992). No such gap is present here. In another, the Fifth Circuit held that a firearms restriction was not warranted for a defendant who pled guilty to negligent discharge of a pollutant, a nonviolent misdemeanor. United States v. Voda, 994 F.2d 149, 153–54 (5th Cir. 1993). There, the court emphasized that "[n]o persons were directly endangered" by the defendant's conduct. Id. at 153. That is plainly not true here. See Statement of Offense, ¶ 7 (referencing "the danger posed by individuals who had entered the Capitol without any security screening or weapons check").

This Court is accordingly convinced that a restriction on possessing dangerous weapons relates to the nature and circumstances of Krauss's offense and its context within a violent insurrection, even though he did not use a firearm to carry out his offense. And, as discussed above, the firearms restriction advances the § 3553(a)(2) purposes of deterrence, public safety, and promoting respect for the rule of law. For these reasons, the Court finds that a firearms restriction is reasonably related to the § 3553(a) sentencing factors.

2. *Deprivation of Liberty*

The next question is whether the purposes advanced by the firearms restriction justify the temporary intrusion on Krauss's liberty. See 18 U.S.C. § 3563(b). They do.

When determining the necessity of a deprivation of liberty, this Court "weigh[s] the consequences for the defendant's liberty against any likely achievement of the statutory

purposes." Shaw, 2023 WL 3619416, at *2 (quoting Russell, 45 F.4th at 441). The consequences for Krauss's liberty are slight. In Shaw, this Court noted that a firearms restriction was "a far narrower invasion of liberty" than other frequently imposed probation conditions — such as the limitations on choice of residence and communications — to which the defendant did not object. Id. at *4 (citing Russell, 45 F.4th at 440). In addition, the "relative brevity" of the probationary period, coupled with the temporary nature of the prohibition, "limit[] the intrusiveness" of the firearms restriction. Id. All of this is equally true for Krauss: his probationary period (nine months) is less than half the length of Shaw's (24 months). He will be able to repossess his firearms when his probation ends, and he will retain his ownership interest in the meantime. See PSR at 11 n.2; Judgment at 4.

Krauss objects that he needs to possess firearms to "effectively defend himself in the event of an attack" on his family home. See Mot. at 4–5. Although another court in this district lifted a probationary firearms restriction in the interest of self-defense, the January 6 defendant in that case demonstrated "credibl[e] fears for her safety." United States v. Cudd, No. 21-68 (D.D.C. Apr. 7, 2022), ECF No. 101 at 2. Specifically, she alleged "serious harassment and threats that have been reported to local law enforcement agencies," including "text messages . . . threatening her at her home address." Id., ECF No. 96 at 3. Krauss makes no such representations here. The Court, accordingly, finds that the firearms restriction's value in promoting the § 3553(a)(2) factors — discussed above — outweighs the temporary and relatively minor intrusion on Defendant's liberty.

    B. Second Amendment Challenge

Krauss next maintains that the probation condition requiring him to temporarily refrain from possessing firearms unduly infringes on his Second Amendment rights. See Mot. at 3–4.

7

As it did in Shaw, this Court emphasizes that the question at issue is narrow: it is not whether the Second Amendment permits stripping misdemeanants of their right to possess firearms. Instead, it is "whether a condition that spans only the duration of the probation period unconstitutionally restricts" any Second Amendment rights that misdemeanants do have. Shaw, 2023 WL 3619416, at *4. Here, as there, the Court concludes that this probation condition is constitutional.

1. *Legal Standard*

The Court set forth the legal standard governing constitutional challenges to probation conditions comprehensively in Shaw. Id. at *4–5. To avoid spilling unnecessary ink, it here adopts its analysis from that Opinion and offers the following by way of summary.

"Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." United States v. Knights, 534 U.S. 112, 119 (2001) (internal quotation marks omitted). Probationers' liberties are restricted in areas from search-and-seizure protections to associational rights to bodily autonomy. Shaw, 2023 WL 3619416, at *4–5 (surveying case law "in which courts have held that probationers enjoy dramatically fewer rights than other citizens" and concluding that "[a] whole range of constitutional liberties that ordinary citizens possess is commonly restricted, even quite severely, for those serving terms in probation").

Although the D.C. Circuit "has yet to articulate a precise test" for determining the validity of a probation condition that affects the ability to exercise constitutional rights, this Court will apply the same legal standard it did in Shaw. Id. at *5. Courts have looked to three factors to assess such challenges to probation conditions. These are: (1) "the purposes sought to be served by probation"; (2) "the extent to which constitutional rights enjoyed by law-abiding

8

citizens should be accorded to probationers"; and (3) "the legitimate needs of law enforcement." Id. (quoting 3 Sarah N. Welling, Federal Practice & Procedure (Wright & Miller) § 547 (5th ed. 2023)).  The Court looks at each.

### 2. Application to Krauss's Challenge

The first and third factors — that is, the purposes of probation and the needs of law enforcement — have been addressed above.  The Court reiterates that Krauss's firearms restriction advances the purposes of the § 3553(a) sentencing factors — including deterrence, public safety, and respect for the rule of law — and furthers the probation officer's legitimate interest in safely and effectively supervising Defendant.

The meat of Krauss's Second Amendment challenge concerns the second factor — that is, the extent to which his Second Amendment rights may be limited during his probationary period.  Krauss concedes that probationary limitations on constitutional rights are "not prohibited" and emphasizes the need for an individualized inquiry, see Mot. at 3, which is what the Court engages in here.  Evaluating this second factor requires balancing "the need for the condition" against "those constitutional rights which [Krauss] retains."  Shaw, 2023 WL 3619416, at *6 (cleaned up).

In Shaw, this Court canvassed the language and lower-court interpretations of the Supreme Court's recent decision in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022), and concluded that, at minimum, "the nature of one's Second Amendment right . . . depends to an extent on being a law-abiding citizen."  Shaw, 2023 WL 3619416, at *7.  As the right to possess firearms "inherently applies with full force only to law-abiding citizens," it is "the quintessential example of a right that is susceptible to limitation during a term of probation."  Id.; cf. Griffin v. Wisconsin, 483 U.S. 868, 880 (1987) ("[I]t is the very assumption

of the institution of probation that the probationer . . . is more likely than the ordinary citizen to violate the law."). Other courts have since agreed. See, e.g., United States v. Terry, 2023 WL 6049551, at *3 & n.7 (W.D. Pa. Sept. 14, 2023); United States v. Ladson, 2023 WL 6810095, at *7 (E.D. Pa. Oct. 16, 2023).

On one side of the second-factor balance, therefore, the constitutional right to possess firearms is regularly, and justifiably, limited during probation. On the other side, there exists a strong need to impose a firearms restriction that warrants the intrusion on Krauss's liberty, as the Court discussed above in its statutory analysis. "Weighing those reasons against a constitutional right that at least to an extent depends on the defendant's law-abidingness," this Court concludes that the second factor "counsels strongly in favor of the restriction's constitutionality" as applied to Krauss. Shaw, 2023 WL 3619416, at *7.

All three factors, then, reinforce the constitutional validity of the firearms restriction. Any Second Amendment firearm-possession rights retained by Krauss may be limited while he is serving a term of probation, and this firearms restriction is an appropriate limitation.

## IV. Conclusion

For the forgoing reasons, the Court will deny the Motion to Alter Judgment. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: November 9, 2023